## IN RE KRISTINA D. ET AL.*
### (AC 18147)

Foti, Schaller and Hennessy, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 10, 1998—officially released January 5, 1999

*David B. Rozwaski*, for the appellant (respondent mother).

*William G. Bumpus*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent mother (respondent) appeals from the judgments of the trial court terminating her parental rights with respect to her three children. The respondent claims that the trial court improperly concluded that the petitioner, the commissioner of the department of children and families, had proven, by clear and convincing evidence, the statutory grounds for termination under General Statutes § 17a-112. Specifically, the respondent claims that the trial court improperly concluded (1) that she failed to achieve a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position

in her children's lives pursuant to § 17a-112 (c) (3) (B)[1] and (2) that it would be in the best interests of her children to terminate the respondent's parental rights. We affirm the judgments of the trial court.

The following facts and procedural history are pertinent to our resolution of this appeal. On June 8, 1994, in response to an "at-risk" complaint, the police arrived at the respondent's home and found her three young children outside and unsupervised. The respondent was inside her apartment asleep and intoxicated. The department invoked a ninety-six hour hold on the children and, on June 10, 1994, sought and obtained an order of temporary custody. The children were then placed in foster care and have remained there since that time.

On March 29, 1995, the children were adjudicated as neglected. On February 26, 1997, the commissioner filed petitions requesting the termination of the respondent's parental rights with respect to all three children pursuant to § 17a-112.[2] In the petitions, the department alleged that the respondent had failed to achieve personal rehabilitation pursuant to § 17a-112 (c) (3) (B) and that her children had been denied the care, guidance or control necessary for their physical, educational, moral or emotional well-being pursuant to § 17a-112 (c) (3)

[1] General Statutes § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that over an extended period of time . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[2] The petitions also sought the termination of the parental rights of the children's fathers. Following the filing of the termination petitions, the fathers consented to the termination of their parental rights and are not parties to this appeal.

(C). The department also alleged, in accordance with § 17a-112 (c) (3), that each of these alleged grounds for termination had existed for more than one year.

Hearings were held before the trial court over three days, beginning on January 13, 1998. In its memorandum of decision, dated January 16, 1998, the trial court found that the commissioner had proven, by clear and convincing evidence, that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the lives of her children.[3] Finding that it would be in the best interests of her children, the trial court then terminated the respondent's parental rights. It is from that judgment that the respondent appeals.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1042.1 et seq. [now § 33-1 et seq.] In the adjudicatory phase, the trial court determines whether the [allegations of the] statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997)." *In re Drew R.*, 47 Conn. App. 124, 127, 702 A.2d 647 (1997).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38

---

[3] The other ground for termination, that the children had been denied the care, guidance or control necessary for their physical, educational, moral or emotional well-being pursuant to § 17a-112 (c) (3) (C), had been withdrawn.

Conn. App. 214, 223, 660 A.2d 863 (1995)." *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . ." (Citations omitted; internal quotation marks omitted.) Id.

I

The respondent first claims that the trial court improperly concluded that she failed to achieve personal rehabilitation. We disagree.

In this case, the adjudicatory determination made by the trial court was that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the ages and needs of her children, the respondent could assume a responsible position in their lives. See General Statutes § 17a-112 (c) (3) (B). " 'Personal rehabilitation' as used in [§ 17a-112 (c) (3) (B)] refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Section 17a-112 (c) (3) (B) "requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Christina V.*, supra, 38 Conn. App. 221.

We cannot conclude that the trial court's determination that the respondent has failed to achieve personal rehabilitation was clearly erroneous. The trial court

noted that, at the time, the children were removed from her care, the respondent was an active substance abuser who was involved in an abusive relationship with her boyfriend, who was an alcoholic. It also noted that the respondent, in an attempt to "rid herself from the grip of substance abuse," entered many mental health and substance abuse programs. The trial court indicated, however, that while the respondent did complete some of the programs, she relapsed following each attempt. The trial court found that this, as well as other "various documents in evidence," clearly established the respondent's inability to remain sober outside of a structured counseling setting.

Additionally, in support of its conclusion, the trial court cited an incident in which the respondent had been admitted to Griffin Hospital where it was determined that she had overdosed on cocaine and benzodiazepine. An examination of the record discloses that this incident occurred in November of 1996, which preceded the February 26, 1997 termination petitions. See *In re Tabitha P.*, 39 Conn. App. 353, 367, 664 A.2d 1168 (1995) (in making adjudicatory determination, trial court limited to considering events preceding filing of termination petition or latest amendment). Finally, the trial court cited the respondent's 1991 arrest and conviction for possession of narcotics, as well as other arrests that had occurred subsequently. Again, the record discloses that several of these arrests occurred prior to the filing of the February 26, 1997 termination petitions.

The trial court, upon consideration of the evidence and testimony before it, concluded that as of the date of the petitions, the respondent "was an unrecovered, active alcoholic and substance abuser, impaired to such an extent that she was unable to provide for the care and custody of her children" and, thus, had failed to achieve personal rehabilitation. Upon our review of the

record and briefs, we cannot say that the trial court's finding was clearly erroneous.

II

The respondent next claims that the trial court improperly concluded that it would be in the best interests of her children to terminate the respondent's parental rights. We disagree.

The trial court, in its memorandum of decision, made specific findings regarding the seven statutory factors necessary to ensure that the termination of the respondent's parental rights was in the best interests of her children.[4] See *In re Tabitha P.*, supra, 39 Conn. App. 361–62; see also General Statutes § 17a-112 (e). These findings can be summarized as follows. The trial court

[4] General Statutes § 17a-112 (e) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

found that the department of children and families had provided appropriate and timely services to the respondent. For example, it found that parental, psychological and substance abuse services were offered, along with foster care and visitation. The trial court noted that the department had also made reasonable efforts to reunite the respondent with her children through the offering of "a variety of services on a very extended basis."

Additionally, the trial court found that the respondent did not meet the expectations set by the department. Of most importance to the trial court was that the respondent failed to remain free from substance abuse. As to the fourth statutory criterion, the trial court found that the children have strong emotional ties with their foster family and consider themselves to be part of that family. The refer to their foster parents as "mom" and "dad." In addition, the trial court found that no presently existing emotional bonds would be severed by the termination of the respondent's parental rights.

The trial court also considered the ages of the children who, at the time of the trial court's ruling, were ten, seven and five years of age. As to the sixth statutory factor, while the trial court noted that the respondent has made efforts to adjust her circumstances, conduct or conditions to facilitate reunification with her children, it noted that all of her efforts have been unsuccessful. Finally, the trial court noted that there was no evidence that anything had prevented the respondent from maintaining a meaningful relationship with her three children.

Upon reviewing the detailed decision of the trial court and the evidence contained in the whole record, we conclude that the trial court's findings that the respondent has not achieved sufficient rehabilitation and that

termination is in the best interests of her children are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.