## IN RE MAXIMINA V.*
## (15569)

Spear, Hennessy and Shea, Js.

Argued December 6, 1996—officially released January 7, 1997

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Maureen A. Chmielecki*, with whom, on the brief, was *Jonathan D. Chomick*, for the appellant (respondent father).

*Mary-Anne Ziewacz Mulholland*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

PER CURIAM. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his daughter. He claims that the trial court improperly concluded that the state had proved, by clear and convincing evidence, the statutory grounds for termination set forth in General Statutes § 17a-112 (b)[2] in light of the factors to be

---

[1] The child's mother and father were both respondents at trial, but only her father appealed from the judgment of the trial court. We refer in this opinion to the respondent father as the respondent.

[2] General Statutes § 17a-112 (b) provides in pertinent part: "The Superior Court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the

considered in a termination proceeding as set forth in § 17a-112 (d).[3]

A hearing on a petition to terminate parental rights involves two phases: adjudication and disposition. See Practice Book § 1042.1 et seq. During the adjudicatory phase, the trial court determines whether one or more of the statutory grounds for termination of parental rights exists by clear and convincing evidence. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase, where the court then determines whether the

establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."

[3] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

termination of parental rights is in the best interests of the child. Id.

In this case, the trial court concluded that three statutory grounds for termination were proved by clear and convincing evidence during the adjudicatory phase: abandonment;[4] failure to rehabilitate;[5] and lack of an ongoing parent-child relationship.[6] See footnote 2. In reaching these conclusions, the court in its memorandum of decision considered the factors set forth in § 17a-112 (d) and made detailed findings on each, as the statute requires. Consequently, the court ordered termination of parental rights. The respondent argues that the evidence adduced at trial does not support the trial court's findings. We are unpersuaded.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's

---

[4] Statutory abandonment occurs "[w]here a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare . . . ." *In re Migdalia M.*, 6 Conn. App. 194, 209, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). "Abandonment focuses on the parent's conduct. It is a question of fact for the trial court . . . ." (Internal quotation marks omitted.) *In re Rayna M.*, 13 Conn. App. 23, 36, 534 A.2d 897 (1987).

[5] " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).

[6] This "statutory definition is inherently ambiguous when applied to noncustodial parents who must maintain their relationships with their children through visitation. . . . [T]he ultimate question is whether *the child* has no present memories or feelings for the natural parent." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Valerie D.*, 223 Conn. 492, 531, 613 A.2d 748 (1992).

ruling." (Citations omitted; internal quotation marks omitted.) *In re Christina V.*, 38 Conn. App. 214, 220, 660 A.2d 863 (1995); see also *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). "[W]e will disturb the findings of the trial court in both the adjudication and disposition phases only if they are clearly erroneous." *In re Tabitha, P.*, supra, 39 Conn. App. 362.

Upon thorough review of the evidence contained in the record and the trial court's detailed decision, we conclude that the trial court's findings are not clearly erroneous.

The judgment is affirmed.