

## IN RE DREW R.*
## (AC 16821)

Lavery, Landau and Dupont, Js.

Argued September 30—officially released November 11, 1997

*Bruce B. McIntyre*, for the appellant (respondent father).

*Michael McKenna*, assistant attorney general, with whom were *Linda Pearce Prestley*, assistant attorney

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LAVERY, J. This is an appeal by the respondent father from the judgment of the trial court terminating his parental rights with respect to his son. The respondent claims that the trial court (1) was too restrictive in its consideration of the evidence of interest, concern or responsibility for the welfare of the child, (2) was incorrect when it found that reasonable efforts toward reunification had been fostered by the department of children and families (DCF), and (3) incorrectly shifted the burden of permanency planning from DCF to the father. We affirm the judgment of the trial court.

The trial court found the following facts. The child was born on April 10, 1993, and was voluntarily placed by his mother in the care of DCF on April 14, 1993. The child has remained in DCF's care in foster homes since that date. The respondent and the child's mother were living in Detroit, Michigan, at the time of the child's conception. In February, 1993, the respondent, aware that the mother of this child was pregnant, left for California and the mother returned to Connecticut where the child was born. The respondent knew that the mother did not want the child. The respondent, although aware that the child was in foster care, did not contact DCF until June, 1994. The respondent had visited the child twice in April, 1994, and April, 1996. He was in Connecticut on at least one other occasion in that time period and failed to visit the child. He had sporadic contact with the foster parents and with DCF. He sent a Christmas present in 1995, but did not acknowledge birthdays or any other holidays. In June, 1994, the respondent sent a letter to DCF stating that he was interested in obtaining custody of his son. DCF

requested an interstate study from California. In November, 1994, DCF received a positive response about the respondent from California and planned to transfer custody to him prior to Christmas, 1994. The respondent asked for a delay in assuming custody. He then relocated, which necessitated another study. In June, 1995, the respondent told DCF he was not in a position to care for his son and requested that an unrelated third party be considered for custody. He also informed DCF that he had moved again. The study of the third party was never completed because the third party failed to cooperate. In November, 1995, the respondent withdrew his request for the child's placement with the unrelated third party.

In October, 1995, DCF brought a termination petition against both parents. The mother consented to termination and, after a hearing on December 8, 1995, the trial court terminated the mother's parental rights. The trial as to the respondent was held on three separate days in April and May, 1996. The respondent was present for two of the three days and was excused by the court for the third day. The trial court found that the state by clear and convincing evidence proved that the respondent abandoned the child in accordance with the standard set forth in General Statutes (Rev. to 1995) § 17a-112 (b) (1), as amended by Public Acts 1995, No. 95-238, § 3,[1] and that it was in the best interest of the

---

[1] General Statutes (Rev. to 1995) § 17a-112 (b), as amended by Public Acts 1995, No. 95-238, § 3, provides in relevant part: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds that the department of children and families has made reasonable efforts to reunify the child with the parent and, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ."

child that the respondent's parental rights be terminated under the standards set forth in General Statutes (Rev. to 1995) § 17a-112 (d), as amended by Public Acts 1995, No. 95-238, § 3.[2]

The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1043.1 et seq. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually

---

[2] General Statutes (Rev. to 1995) § 17a-112 (d), as amended by Public Acts 1995, No. 95-238, § 3, provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Adoptions Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and

supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [W]e will disturb the findings of the trial court in both the adjudication and disposition phases only if they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 83–84.

I

The respondent's first claim is that under the facts of this case the trial court was too restrictive in its consideration of the indicia of interest, concern or responsibility for the welfare of the child. The statutory ground found by the trial court is abandonment as set forth in § 17a-112 (b) (1). See footnote 1. That statute provides that the trial court may grant a petition to terminate parental rights if it finds, upon clear and convincing evidence, that for not less than one year "[t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." General Statutes (Rev. to 1995) § 17a-112 (b) (1), as amended by Public Acts 1995, No. 95-238, § 3.

"Abandonment focuses on the parent's conduct. It is a question of fact for the trial court which has the parties before it and is in the best position to analyze all of the factors which go into the ultimate conclusion that [the statutory standard of abandonment] has been satisfied. *In re Adoption of Webb*, 14 Wash. App. 651,

(7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

657, 544 P.2d 130 (1975). *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 14, 438 A.2d 801 (1981)." (Internal quotation marks omitted.) *In re Rayna M.*, 13 Conn. App. 23, 36, 534 A.2d 897 (1987).

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . .

"It is not lack of interest alone which is the criterion in determining abandonment. Abandonment under General Statutes [§ 17a-112 (b) (1)] requires failure to maintain interest, concern or responsibility as to the welfare of the child. Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred. . . .

"General Statutes [§ 17a-112 (b) (1)] does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern." (Citations omitted; internal quotation marks omitted.) *In re Rayna M.*, supra, 13 Conn. App. 37–38.

The trial court found abandonment by clear and convincing evidence in that the respondent's contact with his son was random at best and that he had not contributed to the child's support though evidence indicated

he was able to contribute a small amount. The trial court further found that the respondent acknowledged birthdays and holidays sporadically and did not often telephone or write inquiring about his son. The respondent failed to visit his son when he was in Connecticut on one occasion. The court further found that the respondent was not involved with his son as of October, 1995, when the petition was filed.

The respondent argues that the criteria set forth are too narrow and do not take into consideration that he resides in California, submitted to studies, requested custody and had telephone contact with DCF. He claims that this showed that abandonment had not taken place. The minimum interest set forth by the respondent does not come close to overcoming the proof of abandonment presented by the petitioner and found by the trial court. Upon our review of the evidence in the record, we conclude that the trial court's findings are not clearly erroneous.

II

The respondent's second claim is that the trial court incorrectly found that DCF made reasonable efforts to reunify him with his son. Section 17a-112 (b) provides in pertinent part: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds that the department of children and families has made *reasonable efforts* to reunify the child with the parent and, upon clear and convincing evidence, that the termination is in the best interest of the child . . . ." (Emphasis added.) General Statutes (Rev. to 1995) § 17a-112 (b) (1), as amended by Public Acts 1995, No. 95-238, § 3.

Section 17a-112 (d) (1) provides in pertinent part: "[T]he court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child

by an agency to facilitate the reunion of the child with the parent . . . ." General Statutes (Rev. to 1995) § 17a-112 (d) (1), as amended by Public Acts 1995, No. 95-238, § 3.

The trial court found that although the respondent knew that his son was placed in foster care when the child was three months old, he did not contact DCF until June, 1994. DCF then authorized home studies and made attempts to accommodate the respondent's request for custody and visitation. The respondent maintained no stable employment or address so that all attempts by DCF to give respondent custody were thwarted. The respondent did not notify DCF of changes of address and employment for lengthy periods of time. DCF notified the respondent in January, 1995, that his inability or unwillingness to take requisite steps for reunification were jeopardizing his relationship with DCF and his son. The trial court found that the respondent was educated, a former employee of the Connecticut department of mental retardation, and was able to appreciate the significance of the situation. The trial court found that DCF had made reasonable efforts to reunify the respondent with his son, but that the respondent's efforts were too inconsistent to warrant further effort by DCF.

We agree with the trial court that the record and evidence showed by clear and convincing evidence that DCF did everything it reasonably could to give the respondent custody, and that it was the conduct of the respondent that led to the failure of DCF's efforts. We have consistently held that to allow a child to languish in foster care is not in the child's best interest. *In re Christina V.*, 38 Conn. App. 214, 224, 660 A.2d 863 (1995).

III

The respondent's final claim is that the trial court shifted the burden of permanency planning from DCF

to him in its consideration of the best interest of the child. A review of this claim in the respondent's brief, the record, the evidence of the whole case and the trial court's memorandum of decision, leads us to the conclusion that this claim is baseless and totally without merit.

The judgment is affirmed.

In this opinion the other judges concurred.