### IN RE TERRANCE C.*
### (AC 19491)

Schaller, Hennessy and Daly, Js.

Argued January 18—officially released June 27, 2000

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Walter D. Hussey*, for the appellant (respondent father).

*Lawrence G. Widem*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

SCHALLER, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his son on the ground of abandonment. On appeal, the respondent claims that the trial court improperly (1) found that the respondent abandoned his son, (2) determined that the petitioner, the commissioner of children and families, established by clear and convincing evidence that reasonable efforts to unify the respondent with his son were made and (3) failed to make factually supported and legally correct dispositional findings. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The respondent's child was born on March 12, 1996. He was removed from his mother's care when he was a few days old and placed with his maternal great grandmother with whom he resides today. The respondent visited the hospital upon the birth of his son, but did not see the child. At that time, the respondent was seventeen years old and had not completed high school. During the pending proceed-

---

[1] The trial court terminated the parental rights of both respondent parents. The respondent mother has not appealed from that judgment. We refer in this opinion to the respondent father as the respondent.

ings, the respondent was sporadically employed and periodically incarcerated. His last contact with the petitioner was on April 22, 1996. He wrote letters to the child at Christmas, his birthday and Thanksgiving; the maternal great grandmother sent pictures of the child to the respondent.

On March 17, 1996, the petitioner filed a neglect petition with respect to the child. Thereafter, on August 20, 1996, the child was adjudicated neglected and committed to the care of the petitioner. On August 19, 1997, the court extended the commitment and found that further reunification efforts between the child and his mother and the respondent were not appropriate. The respondent did not attend those hearings.

On February 11, 1998, the petitioner filed a termination of parental rights petition against the parents with respect to the child, alleging that the respondent abandoned the child in the sense that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (A).[2] The trial concerning termination was held on February 11, 1999. At that time, the respondent signed an acknowledgment of paternity. The child has never been in the custodial care of either parent.

---

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ."

In its memorandum of decision dated March 10, 1999, the trial court found by clear and convincing evidence that the child was abandoned by the respondent father in the sense that the father has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. See General Statutes (Rev. to 1997) § 17a-112 (c) (3) (A). The court further found that the statutory grounds for termination had existed for more than one year as required by General Statutes (Rev. to 1997) § 17a-112 (c) (3) and made the mandatory findings required by General Statutes (Rev. to 1997) § 17a-112 (e), now (d).[3] Specifically, the trial court found that the respondent was offered visits and administrative case reviews, but did not act upon those offers. Further, no expectations were set for the respondent

[3] General Statutes (Rev. to 1997) § 17a-112 (e) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance or regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

due to his lack of involvement in his son's life. The trial court then terminated the parental rights of both parents, finding that it was in the best interest of the child. This appeal followed. Additional facts and procedural history will be set forth as necessary.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 364, 730 A.2d 106 (1999). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) Id., 364–65.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Internal quotation marks omitted.) Id., 364.

I

The respondent claims that the trial court improperly found that he abandoned his son because his conduct did not amount to abandonment. The respondent claims that his conduct must be judged in light of the fact that he was not given any assistance, a service agreement or a statement of expectations. We disagree.

"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 14, 438 A.2d 801 (1981)." *In re Kezia M.*, 33 Conn. App. 12, 18, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child." (Internal quotation marks omitted.) *In re Drew R.*, 47 Conn. App. 124, 129, 702 A.2d 647 (1997). "Section 17a-112 (b) (1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child." (Internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 53, 720 A.2d 1112 (1998).

In this case, the respondent's contact with his son was minimal at best. Although the respondent attempted to visit the child when he was born, he did not actually see the child. He made one further attempt to see the child, one week later. The respondent has sent the child only a few items of correspondence and has not shown concern regarding the child's progress, including walking, talking or religious exposure.

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Internal quotation marks omitted.) Id.

The respondent's incarceration undoubtedly has hindered his ability to provide these essentials for his son. Incarceration alone, however, is not sufficient to estab-

lish the statutory grounds for abandonment. "[T]he inevitable restraints imposed by incarceration do not in themselves excuse a failure to make use of available though limited resources for contact with a distant child." *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982); see also *In re Hector L.*, supra, 53 Conn. App. 367–68 (incarcerated respondent could not avail himself of rehabilitative programs available through department because of incarceration, but that did not excuse failure to use resources offered by department of correction).

In this case, the respondent did not acknowledge paternity until the time of trial, some three years after the child was born. An earlier social study conducted by the petitioner, referring to the respondent as the "putative" father, indicated that he had not acknowledged paternity and had expressed interest in seeing his child only once since the child's birth. Also, the respondent's mother contacted the petitioner expressing uncertainty regarding paternity. The social worker advised her that the respondent must request a paternity test conducted by the correctional institution. Neither the respondent nor his mother pursued this course of action.

It is evident, therefore, that the respondent failed to manifest a reasonable degree of interest, concern or responsibility for his son's welfare. In light of these findings, as supported by the record, we conclude that the trial court's conclusion that the respondent abandoned the child was not clearly erroneous.

## II

The respondent next claims that the trial court improperly determined that the petitioner established by clear and convincing evidence that reasonable efforts were made to unify the respondent with his son. We disagree.

General Statutes (Rev. to 1997) § 17a-112 (c) (1) requires that the department of children and families make "reasonable efforts . . . to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate . . . ." On August 19, 1997, the court found that further reunification efforts were no longer appropriate. Because this finding was made, the petitioner was not required to continue reunification efforts.

"Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the child with his or her family." (Internal quotation marks omitted.) *In re Hector L.*, supra, 53 Conn. App. 371. "The trial court's ruling on [reasonable efforts] should not be disturbed on appeal unless, in light of the evidence in the entire record, it is clearly erroneous." Id. "The question of whether the commissioner was required to prove that the department had made reasonable efforts to reunify [the family] under the applicable statutory scheme is a matter of statutory interpretation, which is a matter of law, requiring plenary review." (Internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 690, 741 A.2d 873 (1999).

Notwithstanding the finding that further reunification efforts were no longer appropriate or required, we note that the petitioner had made efforts to unify the respondent with his child. In July, 1997, the petitioner contacted the respondent with regard to his child, but the respondent did not pursue the services offered. Also, the petitioner contacted the respondent's correctional institution concerning his options with regard to paternity. A second social worker met with the respondent

and questioned him regarding his future plans for the child. The respondent did not inquire about, nor did he attempt to proceed with, scheduled visitations. In fact, the respondent indicated that he wished that his mother would care for the child.

Considering the lack of interest expressed by the respondent, the department made reasonable reunification efforts. We conclude, for the foregoing reasons, that the trial court's finding that the petitioner proved by clear and convincing evidence that the department made reasonable reunification efforts was not clearly erroneous.

## III

Finally, the respondent claims that the trial court failed to make factually supported and legally correct dispositional findings. We disagree.

"During the dispositional phase of the hearing, the evidence must show by a clear and convincing standard that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at that decision, the trial court is mandated to consider and make written findings regarding the seven factors delineated in General Statutes (Rev. to 1997) § 17a-112 (e), now § 17a-112 (d)." *In re Galen F.*, 54 Conn. App. 590, 597, 737 A.2d 499 (1999). Pursuant to § 17a-112 (e), the trial court, in its memorandum of decision, made specific findings regarding the seven enumerated factors. Our discussion is limited to the first and second factors, which require the trial court to make written findings regarding "[t]he timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent"; General Statutes (Rev. to 1997) § 17a-112 (e) (1); and "whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal

Adoption Assistance and Child Welfare Act of 1980, as amended . . . ." General Statutes (Rev. to 1997) § 17a-112 (e) (2).

The court found by clear and convincing evidence that the respondent was offered visits and administrative case reviews, but he did not act on those offers. The court further found by clear and convincing evidence that there was a previous court determination that further reunification efforts were no longer appropriate. In addition, the court found that the petitioner made reasonable efforts to reunify the family under all the circumstances prior to the entry of the court order ending such efforts despite this prior determination.

The court's findings concerning the petitioner's efforts at reunification are factually supported by the record and are not clearly erroneous. Two social workers contacted the respondent to no avail. The correctional institution was also contacted with regard to the paternity issue. The respondent, himself, made no attempt to contact the petitioner. In fact, his last contact with the petitioner was on April 22, 1996. Also, the order of the court determining that further reunification efforts were no longer appropriate was entered on August 19, 1997.

In light of the trial court's findings and conclusions and on the basis of our thorough review of the record, we are not persuaded, considering the circumstances of this case, that the trial court's conclusion that the petitioner made reasonable efforts to reunite the family was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.