[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 9, 2001, the petitioner filed petitions pursuant to C.G.S. § 17a-112, et seq. to terminate the parental rights of Keisha R. and Rosowly D. to their children Zakeya B. and Tiquan B. Respondent mother, Keisha R., consented to termination of her parental rights with regard to Zakeya B. and Tiquan B., and to half-siblings Felicia B. and Kirk R., Jr. Respondent father of Zakeya and Tiquan, Rosowly D., has not appeared in connection with this petition. Trial of this matter took place before this court on November 1, 2001 at the Regional Child Protection Session at the Middlesex J.D. For the reasons stated below, the court finds in favor of the petitioner.
The three statutory grounds alleged against Rosowly D. in the petitions filed May 9, 2001, were (1) that the children Zakeya and Tiquan were abandoned; (2) that the children were found in a prior proceeding to have been neglected or uncared for and the father had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the ages and the heeds of the children, he could assume a responsible position in the lives of the children (C.G.S. § 17a-112 (j)(B)(i)); and (3) that there is no ongoing parent-child relationship with respect to the father that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral or educational needs of the children, and to allow further time for the establishment of the parent child relationship would be detrimental to the best interest of the children. (C.G.S. § 17a-112 (j)(D).
The court finds that notice of this proceeding has been provided in accordance with the provisions of the Practice Book. The court further finds that the Child Protection Session of the Superior Court, Juvenile Matters Division, has jurisdiction over the pending matter and that no action is pending in any other court affecting custody of the children.
"The termination of parental rights is defined as the complete CT Page 306 severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his [or her] parent. . . . [As such, it] is a most serious and sensitive judicial action." (Citation omitted; internal quotation marks omitted.) In re Jonathan M.,255 Conn. 208, 231, 764 A.2d 739 (2001); In re Bruce R., 234 Conn. 194,200 (1995).
The termination of parental rights is governed by statute. C.G.S. § 17a-112. In a proceeding for termination of parental rights, the petitioner must prove a ground alleged in the petition, as of the date of filing the petition or the last amendment, by clear and convincing evidence. In re Joshua Z., 26 Conn. App. 58, 63 597 A.2d 842 (1991),cert. denied, 221 Conn. 901 (1992); In re Teresa S., 196 Conn. 18
(1985); Practice Book 33-1, et seq. Only one ground need be established for the granting of the petition. In re Juvenile Appeal (84-BC),194 Conn. 252, 258 (1984); In re Karrlo K., 44 Conn. Sup. 101, 106
(1994), aff'd., 40 Conn. App. 73 (1996).
Termination of parental rights trials proceed in two stages: the adjudication and the disposition. The adjudicatory stage involves the issue of whether the evidence presented established by clear and convincing evidence the existence of one or more of the statutory grounds as of the date the petition was filed or last amended. In re JuvenileAppeal, (84-AB), 192 Conn. 254, 264 (1984). In this case, the petition was filed on May 9, 2001 and the court therefore considers evidence pertaining to matters up to that date as relevant in the adjudicatory stage.
If at least one pleaded ground to terminate is found, the court proceeds to the disposition stage. The court must consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the children's best interest. Procedurally, the evidence as to both adjudicatory and dispositional phases is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question. State v. Anonymous, 179 Conn. 155, 172-173,425 A.2d 939 (1979); In re Juvenile Appeal (84-BC), 194 Conn. 252, 258,479 A.2d 1204 (1984); In re Nicolina T., 9 Conn. App. 598, 602,520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); In reEmmanuel M., 43 Conn. Sup. 108, 113, 648 A.2d 904, aff'd.,35 Conn. App. 276, 278, 648 A.2d 881, cert. denied, 231 Conn. 915,648 A.2d 151 (1994). In re Eden F., 250 Conn. 674, 688-89, 741 A.2d 873
(1999)." In re Quanitra M., 60 Conn. App. 96, 102, ___ A.2d ___ (2000).
I. FACTS
CT Page 307
The Court has considered the verified petitions; the social study, other documentary evidence, and the testimony of Ms. Marangelo, DCF social worker. The credible evidence admitted at trial supports the following facts by clear and convincing evidence.
Zakeya B. and Tiquan B. were born in New Jersey on September 1990 and February 1992, respectively. They have seven younger half-siblings, with whom DCF has been involved.
There is a lengthy history of DCF involvement with this family. Initially, in February, 1994 when Zakeya was 3 years old and her younger half-sibling Felicia B. was about 2 months old, she and her half-sister were removed from the home when DCF invoked a 96 hour hold on both children due to allegations of lack of supervision. Mother, Keisha R., voluntarily gave custody of Tiquan to her mother through the Probate Court when Tiquan was two years old. Tiquan was removed from that home on January 22, 1999 following reported incidents of physical abuse. On March 17, 1999, Tiquan was committed to DCF as a neglected child and has remained in DCF custody since that time.
Zakeya and Felicia were returned to their mother under an order of protective supervision on February 22, 1995, shortly after the birth of half-sibling Kirk R., Jr. on January 19, 1995. Additional children were born in 1996 (Shawn R.), 1997 (Tiana R.), and 1998 (Joshua R.).[1]
Throughout 1997 and 1998, DCF filed two motions for protective supervision on all the children. On September 14, 1998, DCF again invoked a 96 hour hold on behalf of Zakeya, Felicia, and Kirk R., Jr. These three children were adjudicated neglected or uncared for and committed to the care and custody of DCF on May 17, 1999. The issues in the home included domestic violence, physical abuse, lack of supervision and chronic neglect.
After Zakeya and Felicia had been in DCF care, they disclosed that they had been sexually assaulted by their stepfather, Kirk R., Sr., father of Kirk R., Jr. Ultimately, criminal charges were brought against Kirk R., Sr., and his case proceeded to trial at which both Zakeya and Felicia testified. In December, 2000, he was convicted of two counts of Sexual Assault in the First Degree and two counts of Risk of Injury to a Minor. He was sentenced on April 6, 2001 to 40 years incarceration, suspended after 15 years to serve, to be followed by 35 years' probation.
Zakeya has many special needs as a result of neglect and abuse (including sexual assault) and has been in the same foster home since April, 2000. She is doing exceptionally well considering the sexual abuse she suffered. She does not know her biological father and views as her only father figure, her step-father who was convicted of sexually CT Page 308 assaulting her and her half-sister.
Tiquan has severe behavioral problems. His foster parents have had difficulty controlling his behavior and he was recently arrested for threatening a teacher with a brick. As of November 1, 2001, he was in a partial hospitalization program. Neither Zakeya nor Tiquan currently have adoptive families, although DCF is looking for an adoptive home for them.
Respondent father who was identified by mother, Keisha R., as the father of these two children, has never seen these children, called them or sent cards, letters or gifts to them. He has never provided financial support for these children or inquired about their well-being. According to the information provided to DCF by the childrens' mother, respondent father left when she became pregnant with Tiquan. Neither child knows respondent father.
DCF has made diligent searches to attempt to locate respondent father. They have issued publications in the New Jersey area where mother believed father may have located. They have checked telephone company records and checked with the Department of Social Services and other state agencies in New Jersey to see if he was collecting any funds or assistance from the State of New Jersey. They have also checked prison registries and have been unable to locate respondent father.
II. ADJUDICATION
Each statutory basis set out in General Statutes Section § 17a-112
(j) is an independent ground for termination. The petitioner is required to prove one or more of the two grounds alleged in its petition by clear and convincing evidence. In re Baby Girl B., 224 Conn. 263, 618 A.2d 1
(1992).
A. Location and Reunification § 17a-112 (j)(1):
In order to terminate parental rights, DCF must prove, by clear and convincing evidence, the statutory element requiring "reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." C.G.S. § 17a-112 (j)(1). "Although [n]either the word reasonable nor the word efforts is . . . defined by our legislature or by the federal act from which the requirement was drawn . . . [r]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted; citation omitted.) In re Mariah S., CT Page 30961 Conn. App. 248, 255, ___ A.2d ___ (2000).
The Court finds that petitioner has proved by clear and convincing evidence that DCF undertook reasonable efforts to locate respondent father including an extensive out-of-state search and out-of-state publications. In view of his failure to appear in this matter, the court finds that respondent father is unable or unwilling to benefit from reunification efforts.
B. Statutory Grounds for Termination
1. Abandonment: C.G.S. § 17a-112 (j)(3)(A)
"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. Inre Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801
(1981)." In re Kezia M., 33 Conn. App. 12, 18, 632 A.2d 1122 cert.denied, 228 Conn. 915 (1993); In re Terrance C., 58 Conn. App. 389, 394
(2000). This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. In re Roshawn R., 51 Conn. App. 44, 53 720 A.2d 1112
(1998). Indicia of interest, concern and responsibility include "attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support." In re Drew R., 47 Conn. App. 124, 129702 A.2d 647 (1997). The test for determining abandonment of a child for purposes of termination of parental rights cases is not whether a parent has shown "some interest" in his or her child, but rather, whether the parent has maintained any reasonable degree of interest, concern or responsibility as to the children's welfare. In re Rayna M.,13 Conn. App. 23, 36, 534 A.2d 897 (1987).
Here, respondent father did not make any effort to contact his children. He has never sent letters or cards or made any phone calls inquiring about their well-being. He has not maintained any degree of interest, concern or responsibility for the welfare of the children. The court therefore concludes that this ground has been established by clear and convincing evidence.
2. Failure to Rehabilitate — § 17a-112 (j)(3)(B)(i)
The Court finds that the petitioner has established by clear and convincing evidence that respondent father has failed to achieve such a degree of personal rehabilitation as would encourage the belief that CT Page 310 within a reasonable period of time, considering the ages and needs of the children, he could assume a responsible position in the lives of his children.
"`Personal rehabilitation as used in [Section 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [The statute] requires the trial court to . . . to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life.' (Citations omitted; internal quotation marks omitted). In re Eden F., [250 Conn. 674, 706, 741 A.2d 873
(1999)]. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue. (Internal quotation marks omitted). In reShyliesh H., [56 Conn. App. 167, 180, 743 A.2d 165 (1999)]." In re SarahAnn K., 57 Conn. App. 441, 448, ___ A.2d ___ (2000). See also In reAshley S., 61 Conn. App. 658, 665, ___ A.2d ___ (2001); In re AmnerisP., 66 Conn. App. 377, 384-85, ___ A.2d ___ (2000).
By virtue of his failure to appear to participate in these proceedings, and his failure to take any responsibility whatsoever with regard to these children, respondent father has been unable to bring himself into a position in which he could provide adequate care for these children. Because he failed to appear, no specific steps were ordered by the court. Thus, the court finds by clear and convincing evidence that respondent father has not brought himself into a position in which he can provide adequate care for these children.
3. No Ongoing Parent-child Relationship — § 17A-112(j)(3)(D):
This ground is established when there is no ongoing parent-child relationship with the parent, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical, emotional, moral and educational needs of the child and where allowing further time for the establishment of the parent-child relationship would be detrimental to the best interest of the child.
No ongoing parent-child relationship contemplates a situation in which, regardless of fault, a child either has never known their parent, or that no relationship has ever developed between them, or that the child has lost that relationship so that despite its former existence it has now been completely displaced. In re Juvenile Appeal (Anonymous),181 Conn. 638, 645-46 (1980); In re John G., 56 Conn. App. 12, 22, CT Page 311740 A.2d 496 (1999). In any case, "the ultimate question is whether the child has no present memories or feelings for the natural parent." In reJuvenile Appeal, (Anonymous), 177 Conn. 648, 670 (1979). The presence or absence of positive feelings on the part of the child is determinative.In re Shane P., 58 Conn. App. at 240.
In the adjudicatory phase, the petitioner must establish (1) that no ongoing parent-child relationship exists; and (2) that the allowance of further time for the establishment of such a relationship would harm the interests of the child. In re Jonathan G., 63 Conn. App. 516, 525
(2001).
The Court finds by clear and convincing evidence that there is no ongoing parent-child relationship between the children Zakeya and Tiquan and respondent father. Neither child has ever met respondent father who left mother when she became pregnant with Tiquan. Neither Zakeya nor Tiquan recognize Rosowly D. as a parent in that they would not seek comfort from him or go to him to have their needs met. They have never seen him and they have no present memories of him. As a result of his unwillingness to show any responsibility whatsoever for these children, respondent father has rendered himself unavailable to serve as a parent for them. See In re Shane P., 58 Conn. App. 234, 241 (2000). Respondent father has never met on a day to day basis the physical, emotional, moral or educational needs of these children. In re Jonathan G.,63 Conn. App. 525.
The court further finds by clear and convincing evidence that to allow respondent father further time for the establishment of a parent-child relationship with children who do not know him would be detrimental to the best interest of the children. They are now 11 and 9 and suffering from the effects of having been abused and neglected. Both children have special needs. In view of those needs, it would be detrimental to them to allow additional time in which respondent father could attempt to develop a parent-child relationship.
Thus, the Court finds that the petitioner has proven all three statutory grounds for termination as to respondent Rosowly D. by clear and convincing evidence.
III. DISPOSITION
As to the dispositional phase of this hearing on the petition for termination of parental rights, the court has considered the evidence and testimony related to circumstances and events up to and including November 1, 2001, the date upon which the evidence in this matter was completed.[2] With respect to the seven written factual findings CT Page 312 required by general statutes § 17a-112 (k), each of which the court has considered in determining whether to terminate parental rights under this section, the court makes the following findings:
(1) As to the timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with respondent, the court finds by clear and convincing evidence that services were not offered due to respondent's failure to appear and that respondent was therefore unable to benefit from reunification efforts.
(2) As to whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended, the court finds by clear and convincing evidence that respondent has demonstrated that he is unable or unwilling to benefit from reunification efforts. § 17a-112 (c)(1). The action of DCF to institute termination proceedings is consistent with the federal law designed to eliminate foster care drift and secure permanent placement for children in foster care.
(3) As to the extent to which all parties have fulfilled their obligations under the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, the court finds that no specific steps were ordered as to respondent father. DCF has fulfilled any obligations it had in order to facilitate reunification of the family by diligently attempting to locate respondent.
(4) As to the feelings and emotional ties of the children with respect to the children's parents, any guardian of the children and any person who has exercised physical care, custody or control of the children for at least one year and with whom the children have developed significant emotional ties, the court finds by clear and convincing evidence that Zakeya and Tiquan do not have any bond with respondent father and do not know him. He has never had any contact with them. They have no memories of him and do not recognize him as a parent in the sense that they would not seek comfort from him or go to him to have their needs met.
The only feelings Zakeya has for her stepfather are negative as he has been convicted of sexually assaulting her and her half-sister. Her mother voluntarily ceased all visitation with her and consented to termination of her parental rights after Zakeya testified against her mother's husband, Kirk R., at the trial. Zakeya does have present memories of her mother and feelings for her. She has indicated that although she does not wish to live with her, she would like to have visitation with her mother once in a while. CT Page 313
Tiquan does not have strong feelings for his maternal grandmother with whom he lived from 1994 until 1999 when he was removed from her care based on allegations of physical abuse. Maternal grandmother did not wish to be reunified and Tiquan no longer asks about her. Maternal grandmother was the only mother Tiquan had ever known. Tiquan has not lived with respondent mother since he was two years of age and he does not have an emotional attachment to her. Mother did attend some visits with him beginning in May, 2000, but Tiquan acted out after visitation.
Zakeya is doing well in foster care and has bonded with her foster family. She has lived with them since April, 2000 and they are providing the physical, emotional and educational support she needs. Tiquan, however, has had severe behavioral problems. He is currently in a partial hospitalization program and DCF is looking for a permanent home for him.
(5) As to the age of the children, the court finds that Zakeya is now 11 years of age and Tiquan is 9. The Court further finds, as shown by clear and convincing evidence, that these children require stability of placement and continuity of care and that the children's attorney recommends termination.[3]
(6) As to the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; the court finds by clear and convincing evidence that respondent father has never made any effort to appear in this matter or to demonstrate any acceptable parental standards. Giving him additional time would not likely bring his performance, as a parent, within acceptable standards sufficient to make it in the best interests of the children to be reunited. In re Luis C., 210 Conn. 157 (1989); In reJuvenile Appeal, 183 Conn. 11, 15 (1981).
(7) As to the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable-act of any other person or by the economic circumstances of the parent, the court finds by clear and convincing evidence that no unreasonable conduct by the child protection agency, foster parents or third parties is noted. DCF made diligent efforts to attempt to locate father.
Further, there was no evidence that economic factors may have prevented CT Page 314 regular, continuing contact with the children.
With respect to the best interests of the children contemplated by C.G.S. § 17a-112 (j)(2), by clear and convincing evidence, and based upon all of the foregoing, the court finds that termination of the parental rights of Rosowly D. is in the best interest of the children Zakeya and Tiquan. The court also finds that termination of the parental rights of respondent mother, Keisha R., to Zakeya and Tiquan, based on mother's consent, is in the best interest of the children. Mother voluntarily ceased visitation with Zakeya after the criminal trial and she voluntarily gave custody of Tiquan to her mother when Tiquan was 2. She has had no role in his life since then. These findings are made after considering the totality of circumstances including the children's sense of time and the children's need for a secure and permanent environment.
It is accordingly, ORDERED that the parental rights of Rosowly D. and Keisha R. are hereby terminated as to the children Zakeya B. and Tiquan B. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for Zakeya and Tiquan for the purpose of securing an adoptive family or other permanent placement for the children.
A permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court as required by law.
Judgment may enter accordingly.
It is so ordered this 10th day of January, 2002.
Jongbloed, J.