[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 26, 2002, Deborah A. filed a petition to terminate the parental rights of Ada S. and Brian B. to their son, Nathaniel B., pursuant to C.G.S. § 45a-715, et seq., in Probate Court in Norwich, CT. Deborah A. is Nathaniel's paternal aunt and legal guardian. The grounds alleged against respondent mother and respondent father in the termination of parental rights petition were abandonment, parental failure to rehabilitate, and failure to rehabilitate where the child is under the age of seven and the parental rights of another child were previously terminated. On April 15, 2002, the petition was transferred from Probate Court to the Superior Court for Juvenile Matters at Waterford. Respondents Ada S. and Brian B., Nathaniel's biological mother and father, failed to appear for trial on September 19, 2002, although they were represented by counsel who appeared on that date.
This court notes a finding of default against both respondents for failure to appear and shall proceed to render judgment against them in this matter.
The court notes that the child was represented through trial by his attorney. The court finds that notice of this proceeding has been provided in accordance with the provisions of the Practice Book and that the Child Protection Session of the Superior Court, Juvenile Matters division, has jurisdiction over the pending matter. No action is pending in any other court affecting custody of the child.
FACTS
The Court makes the following findings, having considered the petition, the probate study for termination of parental rights, (Ex. 1), the social study for petition of commitment of a minor child (Ex. 2). and the testimony of petitioner Deborah A., paternal aunt and guardian, Ms. Amanafo and Mr. Oquendo, Department of Children and Families ("DCF") social workers. The Court finds that the following facts were established CT Page 14694 by clear and convincing evidence:
The child Nathaniel was born on June 2000. Ada S. had two other children in DCF care at the time. Due to mother's issues involving physical neglect and abuse of her children, domestic violence, and her inability to maintain stable housing, DCF intervened at Nathaniel's birth. An order of temporary custody was issued and the child was placed in DCF care when he was two days old. On July 10, 2000, Nathaniel was placed in the care of the petitioner, his paternal aunt, Deborah A., where he has remained. Nathaniel's biological sister, Ashley S., born in December, 2001, has also been placed in the care of Deborah A. since she was five weeks old.
Respondent father, Brain B., is Deborah A.'s brother. Brian B. has a significant history of alcohol and substance abuse with which he has struggled for more than 25 years since he was 1 5 years of age. He has been unable to obtain any long-term sobriety. He has been unable to support himself or maintain suitable housing. Respondent father has a criminal history including convictions for domestic violence, assault, breach of peace and driving while under the influence.
Mother, Ada S., now has had five children, all of whom have been removed from her care and custody as a result of her inability to maintain suitable housing, and her exposure of the children to domestic violence, physical neglect and abuse, and her alcoholic partners. She has had her parental rights to two of her children terminated.
When Nathaniel was placed into the care and custody of DCF, mother and father were given visitation. Father's visitation was permitted on the condition that he not be intoxicated at the visits and not consume alcohol prior to the visits. Father appeared intoxicated at a visit with Nathaniel, causing visitation to be cancelled. Although respondent father had a visit with Ashley in March, 2002, and respondent mother had a visit with Ashley in May, 2002, their last visit with Nathaniel was in December, 2000 and neither has seen Nathaniel since. The visits with Ashley occurred at Madonna Place. Even when Deborah A. saw respondents in connection with the visits for Ashley, they did not ask about Nathaniel. On one occasion in March, 2001, Ada S. called and asked to take Nathaniel for a weekend. This was not permitted because visits were ordered to be supervised and Nathaniel had not seen his mother in a long time. Ada was advised that she would have to resume the weekly visits until Nathaniel was comfortable and then, only if the order was modified, would Ada be permitted to take Nathaniel for a weekend. There was no further contact.
Deborah A. has lived in the same home for 1 5 years and has had the CT Page 14695 same phone number for four years. Deborah's brother Brian B. and Ada S. know where she lives and have been to her house. They have called her there. Despite this, they have not visited with Nathaniel since December 23, 2000. There have been a few calls to schedule visits, but mother and father have not shown for the visits. They have sent no cards or gifts for Nathaniel and have not called to inquire as to his well being or to show concern for his health and welfare. They have provided no financial support. Nathaniel has no present memories of either mother or father.
Nathaniel, now almost two and a half years old, has a very strong emotional bond with his aunt whom he calls Mommy and who is his emotional and psychological mother. He has lived with Deborah A. since he was just a few weeks old. He is well cared for by Deborah A. and is happy and healthy.
ADJUDICATION
Each statutory basis set out in General Statutes Sec. 45a-717 (g) is an independent ground for termination. The petitioner is required to prove at least one ground alleged in the petition by clear and convincing evidence. In re Bruce R., 234 Conn. 194 at 204 (1995).
As to the adjudicatory phase, the court has considered the evidence and testimony related to circumstances and events prior to February 26, 2002, the date upon which the petition for termination of parental rights was filed. The Court finds by clear and convincing evidence, that the child Nathaniel has been abandoned by both respondents in the sense that these parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
Under the law, "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11,14, 438 A.2d 801 (1981)." In re Kezia M., 33 Conn. App. 12, 18,632 A.2d 1122, cert. denied, 228 Conn. 915 (1993); In re Terrance C.,58 Conn. App. 389, 394 (2000). This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. In re Roshawn R., 51 Conn. App. at 53. Indicia of interest, concern and responsibility include "attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support." In re Drew R., 47 Conn. App. 124, 129 702 A.2d 647
(1997). The test for determining abandonment of a child for purposes of termination of parental rights cases is not whether a parent has shown CT Page 14696 "some interest" in his or her child, but rather, whether the parent has maintained any reasonable degree of interest, concern or responsibility as to the child's welfare. In re Rayna M., 13 Conn. App., 23, 36,534 A.2d 897 (1987).
The Court finds that neither Brian B. nor Ada S. have had any involvement with their son since December, 2000 when Nathaniel was six months old. Neither respondent has sent cards, gifts, or letters. They have provided no financial support. They have not inquired about Nathaniel's well being. Although there was one occasion, in March, 2001, when Ada S. called and asked to take Nathaniel for a weekend, mother did not follow through with the requirement that she first resume weekly supervised visitation and then seek to have the order modified. Thus, the court finds by clear and convincing evidence that respondents have failed to maintain any degree, let alone a reasonable degree of interest, concern or responsibility for the welfare of this child, and the statutory ground of abandonment is established. Because the court finds that the ground of abandonment has been established, the court need not reach the other grounds alleged in the petition.
 DISPOSITION
As to the dispositional phase of this hearing on the petition for termination of parental rights, the court has considered the evidence and testimony related to circumstances and events up to and including September 19, 2002, the date upon which the evidence in this matter was completed.
With respect to the six written factual findings required by General Statutes § 45a-717 (h), each of which the court has considered in determining whether to terminate parental rights under this section, the court now records the following findings:
(1) as to the timeliness, nature and extent of services offered, the court finds Ada S. and Brian B. were offered visitation supervised by DCF. Mother was also offered domestic violence classes at the Women's Center and parenting classes at Centro Family Reunification Center. She failed to take advantage of these services. Exhibit 2 at pp. 8-10. Brian B. was offered anger management classes at OIC and an alcohol abuse evaluation. He did not follow through with these services. DCF prepared a study at the request of the Norwich, CT Probate Court concerning the petition. This DCF study recommended termination of Brian B. and Ada S.'s parental rights. Exhibit 1.
(2) As to the extent to which all parties have fulfilled their obligations under the terms of any applicable court order, specific CT Page 14697 steps were issued as to Ada S. who complied with some, but not all of them, as set forth in Exhibit 2 at p. 8-10. Brian B. was directed to participate in anger management and alcohol evaluation and treatment and failed to fullfil those obligations. Ex. 2 at p. 6.
(3) As to the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties, the court finds that the child has strong emotional ties to his paternal aunt, Deborah A. He considers her to be his mother. There is no emotional bond with biological mother or father, whom he has not seen since he was six months old.
(4) As to the age of the child, the court finds that Nathaniel was born on June 2000 and is now 2 1/2 years of age.
(5) As to the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child, the court finds that neither respondent has maintained any contact with the child and or appropriate contact with the guardian regarding the child. The court further finds that Brian B. and Ada S. have not made realistic and sustained efforts to conform their circumstances, conduct or conditions to even minimally acceptable parental standards. Giving them additional time would not likely bring their performance, as parents, within acceptable standards sufficient to.make it in the best interest of the child to be reunited with them in the foreseeable future.
(6) As to the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent, the court finds that no unreasonable conduct by the guardian or third parties is noted. The court also finds that neither parent prevented the other from maintaining a meaningful relationship with the child. Both respondent's own conduct was the principal reason each has no relationship with their son. Further, while respondents' economic means may have been limited, economic factors did not prevent regular, continuing contact CT Page 14698 with either the child or the guardian whose home is readily accessible.
With respect to the best interest of the child contemplated by General Statutes § 45a-717 (g), by clear and convincing evidence, and based upon all of the foregoing, the court finds that termination of the parental rights of Ada S. and Brian B. to Nathaniel B. is in the best interest of the child. For almost two years both respondents have failed to show any interest whatsoever in this child. Even when they had visitation with his sister, they did not see Nathaniel. Nathaniel has thrived in the care of his paternal aunt who has provided and cared for him since he was a few weeks old. He is now fortunate to have his sister living with them as well. in failing to visit Nathaniel, in failing to appear for trial, and in remaining whereabouts unknown for at least the last six months, respondents have demonstrated their lack of interest in pursuing a relationship with Nathaniel. The DCF study recommends termination and the attorney for the child supports termination and adoption by Deborah A.
Therefore, based upon the totality of the testimony and evidence presented, it is in the best interest of Nathaniel to terminate the parental rights of Ada S. and Brian B. at this time.
It is accordingly, ORDERED that the parental rights of Ada S. and Brian B. are hereby terminated as to the child, Nathaniel B.
It is So Ordered this 15st day of November, 2002.
___________________ Jongbloed, J. CT Page 14699