IN RE PASCACIO R. ET AL.*
(AC 17676)

Lavery, Schaller and Daly, Js.

Argued September 29, 1998—officially released March 2, 1999

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Richard V. Banks,* for the appellant (respondent mother).

*Jane R. Rosenberg,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Douglas J. Lewis,* for the minor children.

*Opinion*

SCHALLER, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights to four of her children.[1] The trial court determined by clear and convincing evidence that the children had been adjudicated neglected and that the respondent had failed to achieve the requisite degree of personal rehabilitation required by General Statutes (Rev. to 1995) § 17a-112.[2] On appeal, the respondent claims that

[1] The parental rights of the respondent father were also terminated. The father, however, did not appeal. We refer in this opinion to the respondent mother as the respondent.

[2] The trial court's memorandum of decision references General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B); however, because the petition for termination of parental rights was filed on June 13, 1995, the appropriate statute to be applied in this case is General Statutes (Rev. to 1995) § 17a-112 (b) (2). Both statutory provisions require the trial court to make the same determinations with regard to a parent's degree of rehabilitation. All references in this opinion to § 17a-112 are to the 1995 revision. General Statutes (Rev. to 1995) § 17a-112 (b) provides in relevant part: "The superior

the trial court improperly (1) determined that there was sufficient evidence to support the termination notwithstanding the respondent's testimony that she had stopped using drugs and embraced religion and (2) considered the respondent's conduct in court, including her failure to secure child care for her infant, as further indication of her lack of appropriate adult judgment. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The respondent is thirty-three years old and of borderline to lower average intelligence. She had nine children. The respondent's parental rights to her four oldest children have been terminated. Of the respondent's remaining five children, four are the subjects of this appeal.[3] All four children have documented behavioral problems and learning difficulties that have been diagnosed by court-appointed clinical psychologists. The respondent has a history of drug abuse, and she has admitted using cocaine while pregnant. The respondent conceded at trial that the four children were properly removed from her custody on September 7, 1993, pursuant to a petition filed by the commissioner of children and families. On September 13, 1993, the four children were adjudicated neglected and were placed in the care of the department of children and families. The department subsequently placed the four children in licensed foster homes. In

court upon hearing and notice . . . may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . . "

[3] The respondent's youngest child is an infant who is living with her and not subject to the judgments of the trial court.

the petition for the termination of parental rights filed on June 13, 1995, the commissioner alleged that the respondent had failed to achieve personal rehabilitation pursuant to § 17a-112 (b) (2). On July 29, 1997, the trial court determined by clear and convincing evidence that the respondent's four children "have previously been adjudicated neglected" and that the respondent "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the [children], [she] could assume a responsible position in the [lives] of the [children]" as required under § 17a-112 (b) (2). The trial court then concluded, after making the proper factual findings, that it was in the best interests of the children to terminate the respondent's parental rights.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1042.1 et seq. [now § 33-1 et seq.]. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997)." *In re Drew R.*, 47 Conn. App. 124, 127, 702 A.2d 647 (1997).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995)." *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998). "On appeal, our function is to determine whether the

trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) Id.

I

The respondent claims that the trial court improperly found that she failed to achieve rehabilitation in light of her testimony that she made changes in her personal lifestyle. Specifically, the respondent claims that her uncontradicted testimony that she stopped using drugs and began practicing religion should have led the trial court to conclude that she had achieved the required level of rehabilitation under § 17a-112 (b) (2). We disagree.

"The trial court is not bound by the uncontradicted testimony of any witness." *Bieluch* v. *Bieluch*, 199 Conn. 550, 555, 509 A.2d 8 (1986); see *Acheson* v. *White*, 195 Conn. 211, 217, 487 A.2d 197 (1985). A trier of fact is free to reject even uncontradicted testimony. See *State* v. *Dudla*, 190 Conn. 1, 7, 458 A.2d 682 (1983). "It is settled that the trier of fact has the right to accept part and disregard part of the testimony of a witness." *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 422, 446 A.2d 799 (1982). "The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony." Id.

The trial court, therefore, was under no obligation to give particular weight to the respondent's testimony in its determination of whether she had achieved rehabilitation under § 17a-112 (b) (2). The test is not whether there was any evidence produced as to the respondent's personal rehabilitation, but whether the respondent has

achieved the standard of personal rehabilitation required under § 17a-112 (b) (2).

" 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Section 17a-112 (b) (2) "requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Christina V.*, supra, 38 Conn. App. 220–21.

The trial court found by clear and convincing evidence that the children previously had been adjudicated neglected and that the respondent had not made realistic and sustained efforts to conform her conduct to acceptable parental standards. The court further noted that the respondent would require extensive therapy to deal with her lack of parenting skill and judgment and to deal with her psychiatric difficulties. The trial court found that giving the respondent additional time would not be likely to bring her parental performance within the standards required by § 17a-112 (b) (2).

There was ample expert testimony in support of the conclusions reached by the trial court. Two court-appointed clinical psychologists, David Mantell and Diana Badillo Martinez, evaluated the respondent and her children and submitted reports on their findings. Mantell evaluated the respondent and her children on three separate occasions and testified that the respondent had not demonstrated the necessary level of rehabilitation. Specifically, Mantell testified that the respondent was "unable [to] plan [an] action reflecting adult insight and judgment—e.g., marries a man with a drug addiction history, has another child . . . has

not secured more hours of time with the children." Mantell further testified that the respondent failed to provide "even minimally accepted care for her children." Though Mantell was aware that the respondent had ceased to use drugs and had become an active church member, he remained unconvinced that she could resume a constructive parental role in the lives of her children.[4] Mantell testified that the respondent "continued to display personality disorder, including immaturity and poor judgment, of such magnitude that she could not be relied upon to exercise good judgment and to provide the services that these children need on a regular basis." On the basis of his observations, Mantell recommended that the respondent's parental rights be terminated.

Martinez concurred with Mantell's assessment of the respondent. Martinez testified that the respondent was "unable to parent these children with their special needs, even with twenty-four hour assistance." Martinez concluded that the respondent was "such a poor parent that an alternative parent would be needed; twenty-four hour assistance is an impractical plan." "The psychological testimony from professionals is rightly accorded great weight in termination proceedings." *In re Nicolina T.*, 9 Conn. App. 598, 605, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987). We find that there was ample evidence in support of the conclusions reached by the trial court.

Even if we assume that the respondent is now drug free and religious, the evidence clearly supports the

---

[4] Mantell testified that the respondent's behavior had a harmful effect on both of her younger children. Mantell observed that during an evaluation of the respondent's interaction with her children, she "promptly lost control of the younger children." Mantell further testified that during this visit, the respondent alienated the younger children by emphasizing that she was their mother and that their foster mothers with whom the children had formed close bonds were not their real mothers.

court's conclusion that she has not attained the requisite level of personal rehabilitation mandated under § 17a-112 (b) (2). Accordingly, we conclude that the findings of the trial court are supported by clear and convincing evidence.

## II

The respondent also claims that the trial court improperly considered her conduct in court as evidence of her lack of appropriate judgment and parenting skills. The respondent argues that when the trial court directed her not to bring her infant to the next hearing, she was unable to make appropriate arrangements, and the court improperly held that conduct against her. Specifically, the respondent makes reference to the trial court's statements in its memorandum of decision that "her failure to follow the advice of her attorney and her failure to secure child care for her [children] . . . were further indications of her lack of appropriate adult judgment and parenting skill."

On March 17, 1997, at a pretrial hearing, the trial court, *Dyer, J.*, gave the respondent permission to bring her nine month old infant into the courtroom. On June 10, 1997, the respondent came to court with her infant. The trial court indicated that the presence of the infant would detract from the respondent's ability to pay attention to the proceedings and to work effectively with her attorney. Accordingly, the court advised the respondent to make day care arrangements for her infant during the trial. The next morning the respondent again brought her infant into the courtroom. In an attempt to accommodate the respondent, the court allowed her to observe the proceedings from an adjoining room. Appropriate breaks were provided by the trial court to afford the respondent's attorney the opportunity to review the testimony with the respondent. The court

noted that the respondent refused to stay in the observation room and preferred to walk around in the public corridor outside of the courtroom. The court also noted that during the course of the trial, the respondent would come into the courtroom with her child and depart at whim, never staying long even when the infant was quiet or asleep. The trial court further observed that on the final day of trial, the respondent "elected to testify over the objection of her lawyer . . . [and] [e]ven on that day she made no provisions for child care." The court found that the respondent's "failure to follow the advice of her attorney and her failure to secure child care for her child [were] further indications of her lack of appropriate adult judgment and parenting skill."

The trial court's reliance on the respondent's demeanor as support for its decision constituted an evidentiary ruling. The law is clear that courtroom conduct may be considered by the trial court in reaching its decision. "It is the peculiar province of the trial court to observe the demeanor of the parties and their witnesses and to draw inferences therefrom as to the motives underlying their testimony and conduct. . . . Findings based upon these observations in the courtroom are in the same category as findings based upon a view of premises or property. Such evidence is as properly to be considered by the court in rendering its decision or making its finding as if presented by the lips of witnesses." (Citations omitted; internal quotation marks omitted.) *Solomon* v. *Aberman*, 196 Conn. 359, 378–79, 493 A.2d 193 (1985). "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of the evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v.

*Zollo,* 36 Conn. App. 718, 723, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995), quoting *State* v. *Robinson,* 227 Conn. 711, 732, 631 A.2d 288 (1993).

"The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties . . . ." *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984). The trial court properly considered the respondent's conduct in court, including her failure to secure child care for her infant, as further indication of her lack of appropriate adult judgment.

The judgments are affirmed.

In this opinion the other judges concurred.