# IN RE KASHEEMA L. ET AL.*
## (AC 17767)

O'Connell, C. J., and Hennessy and Freedman, Js.

Argued September 15, 1999—officially released January 25, 2000

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Mary Ann Barile,* for the appellant (respondent mother).

*Jane R. Rosenberg,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent mother[1] appeals from the trial court's judgments terminating her parental rights with respect to her four children. The respondent claims that the trial court failed to adhere to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B)[2] in finding that she failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, she could assume a responsible position in the lives of her children. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. The respondent has an extensive history of drug abuse. In March, 1992, the commissioner

[1] The parental rights of the children's respondent fathers were also terminated. Only the respondent mother has appealed. We refer to her in this opinion as the respondent.

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." The amendment to § 17a-112 (c) that took effect after the filing of the petition in this case; see Public Acts 1996, No. 96-246, § 18; is not at issue. We refer in this opinion to the 1997 revision for convenience.

of the department of children and families (commissioner) petitioned the court, alleging that the respondent's two children were neglected. The petition alleged that the two children, one of whom was one month old, were found on the street with the intoxicated respondent at 4 a.m. The temperature was just below freezing and the children were nearly hypothermic. The two children were eventually adjudicated to be neglected. The younger child was committed to the commissioner's custody, and the older child was allowed to return to the respondent under protective supervision at an in-patient drug rehabilitation program. The respondent relapsed after the six month treatment program and the older child was once again brought before the court, subsequently adjudicated neglected and committed to the custody of the commissioner.

Thereafter, the respondent gave birth to a third child, who was also committed to the commissioner's care within six weeks of his birth because the respondent returned to her shelter intoxicated and unable to care for the child. The child was returned to the respondent under protective supervision, but was later removed once again because the respondent was still using drugs, had an unsanitary apartment and an abusive boyfriend and was not properly caring for her child.

The respondent was in another drug rehabilitation program when her fourth child was born. Shortly thereafter, the child was committed to the care of the commissioner when the respondent left the child with someone and failed to return. The respondent began another drug treatment program and left against clinical advice one month later. The following month, she entered yet another substance abuse program, which she completed in March, 1996. During the lives of her children, the respondent had entered five drug abuse programs and relapsed after completing each of them. In April, 1996, the commissioner filed petitions for ter-

mination of the respondent's parental rights in all four children. Since that time, the respondent completed another substance abuse program and has since remained drug free. She has also married and secured employment.

The court found that despite the efforts of the department of children and families to reunify the respondent with her children, the respondent failed to attend some visits with her children and did not go to scheduled classes to help her with her deficits. In addition, she has a high risk of relapse into her drug problem, as she has been in and out of numerous drug programs without success. The trial court also found that the respondent failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, she could assume a responsible position in the lives of these children pursuant to § 17a-112 (c) (3) (B). In addition, the trial court found that it was in the best interests of the children to have the respondent's parental rights terminated. The respondent appealed.

" 'The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1042.1 et seq. [now § 33-1 et seq.]. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence.' " *In re Pascacio R.*, 52 Conn. App. 106, 109, 726 A.2d 114 (1999). "In making the adjudicatory determination, the court is limited to considering events preceding the filing of the termination petition or the latest amendment." *In re Tabitha P.*, 39 Conn. App. 353, 367, 664 A.2d 1168 (1995); see Practice Book § 33-3 (a).

"If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court deter-

mines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997). *In re Drew R.*, 47 Conn. App. 124, 127, 702 A.2d 647 (1997)." (Internal quotation marks omitted.) *In re Pascacio R.*, supra, 52 Conn. App. 109. "In making this determination, the trial court can consider all events occurring prior to the date of the dispositional hearing, including those occurring after the filing of the termination petition." *In re Tabitha P.*, supra, 39 Conn. App. 367.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Pascacio R.*, supra, 52 Conn. App. 109–10.

The respondent claims that the court failed to adhere to the statutory criteria of § 17a-112 (c) (3) (B). Specifically, she claims that the court (1) found that she did, in fact, achieve rehabilitation, (2) improperly considered an "all encompassing" best interest standard and (3) improperly relied on publications in reaching its finding of failure to achieve personal rehabilitation pursuant to § 17a-112 (c) (3) (B).

I

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." (Internal quota-

tion marks omitted.) *In re Christina V.*, supra, 38 Conn. App. 220. "[Section 17a-112 (c) (3) (B)] requires parental rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position [in the life of the child]. . . . Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 366–67, 730 A.2d 106 (1999).

The court found by clear and convincing evidence that the respondent failed to achieve a sufficient degree of personal rehabilitation as required by the statute. After hearing testimony from the respondent's own psychologist, a court-appointed psychiatrist and the children's therapists, the court found that even with all the progress the respondent had made since the petition for termination was filed, the respondent is still not presently able to care for her children. Namely, the respondent's sobriety is too fragile and the risk of relapse is too great. Her whole support system would be enormously taxed if the children were returned to her, thereby adding to the risk of reunification.

The respondent claims that the court did in fact find that she had achieved rehabilitation. Specifically, the respondent posits that because the court noted her "recovery" in the seventeen months between the filing of the petition to terminate parental rights and the termination hearing, it found that she had achieved rehabilitation. Contrary to the respondent's claim, in its memorandum of decision, the court states specifically that the respondent had *not* achieved sufficient rehabilitation. The court did note that after the petition for

termination was filed, the respondent obtained a job and became drug free. In considering whether the respondent had achieved rehabilitation, however, the court properly considered only the events that occurred prior to the filing of the termination petition. *In re Tabitha P.*, supra, 39 Conn. App. 367 ("[i]n making the adjudicatory determination, the court is limited to considering events preceding the filing of the termination petition or the latest amendment").[3] In light of the evidence of the respondent's extensive history of drug abuse, the resulting neglect of her children and her history of relapse, the court's decision that the respondent had not achieved rehabilitation was not clearly erroneous.

## II

The respondent also claims that the court improperly used an "all encompassing best interest standard" in reaching the decision to terminate her parental rights. In the dispositional phase of a termination hearing, the court determines whether termination is in the best interests of the children. *In re Pascacio R.*, supra, 52 Conn. App. 106. "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [General Statutes (Rev. to 1997) § 17a-112 (e), now § 17a-112 (d)]." *In re Tabitha P.*, supra, 39 Conn. App. 362.

The court found that the termination was in the best interests of the children. Relying on the testimony of expert witnesses, the court determined that the respondent's sobriety was fragile and that the risk of relapse, particularly in the event of reunification with the children, was great. In addition, the court found that the children had suffered significant neglect at the hands

---

[3] We note that a parent who has obtained a job and remained drug free in not necessarily rehabilitated. See *In re Christina V.*, supra, 38 Conn. App. 219.

of the respondent. They are extremely fearful of being removed from their present homes and have formed primary attachments with the foster parents they have been with for most of their lives.

The respondent claims that the court improperly considered the fact that the children have lost parental attachments with the respondent and instead formed reciprocal, quality relationships with the foster parents. To the contrary, one of the factors that the court was required to consider was the "feelings and emotional ties of the child with respect to his parents . . . and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ." General Statutes (Rev. to 1997) § 17a-112 (e) (4), now § 17a-112 (d) (4). Because the court found by clear and convincing evidence that the respondent is unable to care for her children and has a high risk of relapse of substance abuse, and because the children have strong emotional ties with their foster families, we hold that the court's decision that termination was in the best interests of the children is not clearly erroneous.

### III

The respondent makes much of the fact that the court cited scholarly works in its memorandum of decision to support the finding that it is in the best interests of the children to terminate her parental rights. In its decision, the court cited literature in footnotes to explain the psychological effects of a child bonding with a foster parent.[4] In *In re Angellica W.*, 49 Conn. App. 541, 552–53, 714 A.2d 1265 (1998), this court held that it was not an abuse of the trial court's discretion

---

[4] The cited literature was J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (1973), and J. Goldstein, A. Freud & A. Solnit, Before the Best Interests of the Child (1979).

to make reference in its opinion to the same literature cited by the trial court here. In addition, we noted that our Supreme Court has cited the same literature as secondary authority in its opinions. Id. We note that the trial court merely made reference to the scholarly works and did, in fact, make its own findings as to the best interests of the children. We hold, therefore, that the respondent's claim that the court improperly cited the literature in question has no merit. Accordingly, we conclude that the court's decision to terminate the respondent's parental rights was not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.