[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15046
On October 10, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Zoraida V. and Ellery B., Sr. with respect to their son, Nicholas V. As to each respondent-parent, the termination petition alleged that each parent abandoned the child, Nicholas V., that each parent failed to rehabilitate themselves within a reasonable period of time so as to encourage the belief that either could assume the role of a responsible parent for their son, and that there existed no ongoing parent-child relationship. See C.G.S. § 17-112 (j)(3)(A), (B) and (D).
The termination of parental rights trial was held on June 27, 2001, July 10, 2001 and concluded on July 11, 2001. On July 19, 2001, respondent-mother filed a motion to transfer guardianship of Nicholas V. to the foster parents (See Respondent's Mother's Motion forDisposition). From the evidence presented at the hearing and the applicable case law, the Court grants the termination of parental rights with respect to Nicholas V. and denies the motion to transfer guardianship of Nicholas V.
Facts:
The Court finds the following:
Nicholas V. was born on April 1998. At the time of his birth, respondent-mother Zoraida V. was twenty-nine years old and respondent-father Ellery B., Sr. was thirty-two years old. Nicholas V.'s parents never married. DCF has been involved with this family since 1991 and has taken custody of all four children born of the respondent-parents. Nicholas V., at the time of his birth, had symptoms consistent with heroin/methadone withdrawal which included tremors and difficulty sleeping; as a result, he experienced developmental delays which required him to attend a Birth to Three program. Nicholas V. has never lived with either parent and has always been in foster care. He was two months old when he began to reside in his current foster home. His foster family consists of a father, mother, and their two children: an eighteen year old girl and a thirteen year old boy. The foster father is respondent-mother's brother. The foster family considers Nicholas to be part of their immediate family and would like him to be a permanent member of their house. Nicholas V. has thrived under their care and supervision. He has established a strong and solid bond with this foster care family; his foster parents are the only people that Nicholas V. recognizes as his father and mother; he is also very attached to his foster siblings. In contrast, Nicholas V. does not have a bond with the CT Page 15047 respondent-parents or any of his biological siblings. The credible evidence establishes that Nicholas V. is bonded with his current foster family and looks to them for guidance and support.
Respondent-mother Zoraida V. was born on October 19, 1968. She was the seventh of thirteen children. When she was thirteen years old, she dropped out of school and began staying out all night. All four of her children have been removed from her care by DCF. The two oldest children have had their guardianship transferred to relatives: Ciera V., born November 15, 1985, was taken from the mother in June of 1991 and in August of 1993, Ciera V.'s guardianship was transferred to a maternal relative; Ellery V., born October 3, 1992, tested positive for cocaine at the time of his birth and in July of 1997, Ellery V.'s guardianship was transferred to a paternal relative. During the time of Nicholas V.'s pregnancy and birth, respondent-mother was involved with the Coventry House for treatment. She continued to use illicit substances and after the child's birth did not resume treatment in any meaningful manner at Coventry House and was discharged from that program for failing to follow its rules. Her whereabouts were unknown following this program discharge and only became known after she was incarcerated on new criminal charges. While incarcerated on these new charges, Zoraida V. gave birth to her fourth child, Savannah V., born July 17, 2000. The childbirth took place in respondent-mother's jail cell. Savannah V. is a medically fragile child with grave and significant health concerns who now resides in a specially licensed DCF foster home due to the seriousness of her health condition. Respondent-mother has a chronic and severe substance abuse history involving the use of cocaine and heroin. She has little work history and an extensive criminal history dating back to 1987 which includes convictions for larceny, burglary, possession of narcotics, failure to appear, and violation of probation. Her homelessness has been a chronic problem for Zoraida V. She stays with relatives and friends randomly. Her whereabouts were often unknown. She has been given continuous opportunities for treatment, but repeatedly fails to complete these programs. As recently as April, 2001, she relapsed with her drug use while out on a pass from the Elm City Women's and Children Center. According to her own treating psychiatrist's report, she is not in full remission and is at continued high risk for drug relapse. See Respondent-mother's exhibit E, Report of Dr. Gregory Pelton. The extensiveness of her substance abuse history is evident: she is unable to even provide similar details of her history to recent treatment providers. See State's exhibit #7, Coventry House Application; State's exhibit #11, Morris Foundation Assessment; and Respondent-mother's exhibit E, Evaluation of Dr. Gregory Pelton. The credible evidence establishes that Zoraida V. has minimal experience in maintaining a drug-free lifestyle and her prognosis for a drug-free lifestyle in the future is poor. The respondent-mother has treated her court expectations CT Page 15048 in a "selective" manner. She did not participate fully in counseling for individual and parenting skills or for substance addiction, despite the numerous referrals made on her behalf She has failed to consider the effects of her lifestyle on her child. Her chaotic life style and inability to address her substance abuse addiction has delayed indefinitely the return of Nicholas V. to her.
Respondent-father Ellery B., Sr. was born on November 11, 1965. He is a resident of Hartford and has a criminal history that consists of two convictions for Sale of Narcotics. Little is known about respondent-father due to his complete lack of interest in his son, Nicholas V. The credible evidence at trial established that respondent-father attempted one visit with Nicholas V. This visit occurred at the foster parents home in the middle of the night, when Ellery B., Sr. arrived at their home and belligerently demanded to see his son. The foster family turned him away and no visit was made with the child. Ellery B., Sr. has not participated in any meaningful manner in the neglect or termination proceedings with respect to his child. He has not supported his son physically, emotionally, or financially and has no father-son relationship with Nicholas V.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361(2001). DCF should not make reunification an impossibility.
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Nicholas V. with his parents, Zoraida V. and Ellery B., Sr.
Respondent-mother only selectively took advantage of the DCF efforts: namely she participated in individual, parenting, and substance abuse counseling only when she chose to do so. She was inconsistent in her allowed visits with the child.
Respondent-father made no effort to reunify with his child. On May 18, 1999, Ellery B., Sr. told DCF that he did not want to reunify with his child and had no time to participate in programs and evaluations. Respondent-father refused all services offered. Further efforts on the CT Page 15049 part of DCF with respect to reunify Nicholas V. with respondent-father simply were not appropriate or possible.
Adjudicatory Findings:
As to the respondent-mother, Zoraida V., the Court finds by clear and convincing evidence that she abandoned her minor son, Nicholas V., that she failed to rehabilitate herself within a reasonable period of time so as to encourage the belief that she could assume the role of a responsible parent for her son, and that there existed no ongoing parent-child relationship between them.
The court finds by clear and convincing evidence that Zoraida V. abandoned her minor child in the sense that she failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Nicholas V. The Court's finding focuses on the respondent-mother's conduct. While lack of interest in this child is not the sole criterion in determining abandonment, the Court finds that Zoraida V. made minimal and inconsistent efforts to have contact with her son either through telephone calls, cards and gifts, or any level of financial support. She has not demonstrated care and concern for the welfare of this child, but rather her care and concern are self motivated in that she needs to be acknowledged and loved by the child.
Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. Inre Roshawn R., 51 Conn. App. 44, 52 (1998). Zoraida V. allowed long periods of time to interrupt her visitation of Nicholas V. Her limited interaction with the child was unsettling and confusing for the child and did not contribute in any meaningful manner to the child's needs.
The Court acknowledges that during a period of time respondent-mother was incarcerated. Incarceration does not, in itselt, constitute abandonment. In re Juvenile Appeal, 187 Conn. 431, 443 (1982). A parent's failure to utilize available opportunities to maintain contact with a child will not be excused based solely on the restrictive nature of the incarceration. Respondent-mother did not utilize the opportunities available to her in a manner consistent with her current claims of concern for the child, but rather the credible evidence establishes that her contact was only sporadic and clearly effected by her substance addiction.
As to the second ground alleged by the State against respondent-mother, the court finds by clear and convincing evidence that Zoraida V. has failed to rehabilitate to such degree as would encourage CT Page 15050 the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Nicholas V.'s life.
The Court finds that the credible evidence establishes that Nicholas V. was found to be neglected and uncared for. He has been in the custody of DCF continuously since April of 1998. The respondent-mother had been provided specific steps on September 21, 1998 to take to facilitate the return of this child and she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924
(1999). The Court defines ""personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D.,35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was chronically involved in the criminal justice system, was unable to successfully address her narcotics addiction, and was sporadic in securing housing and employment. Her lifestyle had a direct and negative effect on her relationship with her son. Her whereabouts were unknown from August of 1999 to March of 2000.
During the times respondent-mother was not incarcerated, she demonstrated poor judgemnent in failing to attend visitations with her child, failing to attend counseling sessions (with respect to substance abuse, individual and parenting concerns), failing to cooperate with probation and, subsequently, being arrested on new criminal charges.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The court finds by clear and convincing evidence that Zoraida V. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Nicholas V.'s life. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600, 616-18
(1992).
As to the third ground alleged by the State against respondent-mother, the court finds by clear and convincing evidence that Zoraida V. has no ongoing parental relationship with Nicholas V. and that there is CT Page 15051 insufficient time to establish one. The credible evidence establishes that Nicholas V. does not recognize Zoraida V. as his mother. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12,22 (1999).
Respondent-mother had the opportunity to establish a relationship with her son. Through her repeated involvement in the criminal justice system and her inability to manage even her own affairs, she has failed to establish a mother-son relationship. See In re Kezia M., 33 Conn. App. 12,21-22, cert. denied, 228 Conn. 915 (1993). Any interaction that she had with Nicholas V. has been lost due to the child's young age or any that is recollected by the child serves only to confuse and distress the child. Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State has sustained its burden of proof in establishing no ongoing relationship between respondent-mother and Nicholas V.
As to the respondent-father, Ellery B., Sr., the Court finds by clear and convincing evidence that he abandoned his minor son, Nicholas V., that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his son, and that there existed no ongoing parent-child relationship between them.
The court finds by clear and convincing evidence that Ellery B., Sr. abandoned his minor child in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Nicholas V. The Court's finding focuses on the respondent-father's conduct. While his lack of interest in this child is not the sole criterion in determining abandonment, the Court finds that Ellery B., Sr. made only one attempt to have contact with his son. He did not telephone, send cards or gifts, or give any level of financial support. Ellery B., Sr. has not demonstrated care and concern for the welfare of this child.
Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. Inre Roshawn R., 51 Conn. App. 44, 52 (1998). Ellery B., Sr. stated to DCF that he did not want to reunify with his child and he did not wish to make any effort on behalf of his son. Respondent-father did not utilize CT Page 15052 the opportunities available to him in a manner consistent with his concern for the child, but rather the credible evidence establishes that his only attempted contact was generated by self interest and was completely inappropriate.
As to the second ground alleged by the State against respondent-father, the court finds by clear and convincing evidence that Ellery B., Sr has failed to rehabilitate to such degree as would encourage the belief that within a reasonable time, considering the age and needs of this child, that he could assume a responsible position in Nicholas V.'s life.
The Court finds that the credible evidence establishes that Nicholas V. was found to be neglected and uncared for. He has been in the custody of DCF continuously since April of 1998. The respondent-father had been provided specific steps on September 21, 1998 to take to facilitate the return of this child and he has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position (as a parent) in the life of this child. See, In reEden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines ""personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-father did not take any parenting programs, did not participate in any substance abuse testing and/or treatment, and did not secure adequate housing or employment. His lifestyle had a direct and negative effect on his relationship with his son. It is evident that Ellery B., Sr. puts his own needs over those of his child. These characteristics were obvious from his complete lack of involvement in the pending matter.
The Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner.
As to the third ground alleged by the State against respondent-father, the court finds by clear and convincing evidence that he has no ongoing parental relationship with Nicholas V. and that there is insufficient time to establish one. The credible evidence establishes that Nicholas V. does not recognize Ellery B., Sr. as his father. Respondent-father has afforded this child no attention or time. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12, 22 (1999). CT Page 15053 Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State sustained its burden of proof in establishing no ongoing relationship between respondent-father and Nicholas V.
Required Findings:
Once the court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by clear and convincing evidence, that termination is in the best interests of each child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P.,39 Conn. App. 353 (1995). The Court having considered the credible evidence presented makes the following findings:
1. Each parent had the opportunity to engage in timely and appropriate services provided to facilitate their reunion with this child. As to the respondent-mother these services included: housing assistance, addiction assistance, individual counseling and parenting groups; as to the respondent-father these services included: housing assistance, addiction assistance, and parenting groups; no services were given due to his lack of interest and involvement in the proceedings;
2. DCF made reasonable efforts to reunite the child with his family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-parents' specific steps are found in State's exhibit #4. The credible evidence shows that mother did not fulfill these requirements and continues to struggle with the same issues currently. The credible evidence shows that father did not fulfill these requirements in any manner;
4. The child has developed feelings and strong emotional ties towards the foster parents with whom he has lived with since the age of two months. Nicholas V. looks to his foster family for care, comfort and support;
5. Nicholas V. is three years old;
6. Respondent-mother has not adjusted her circumstances to make it in the best interest of the child to return to her home in the foreseeable future. The Court finds that her contact was sporadic at best. CT Page 15054 Respondent-father Ellery B., Sr. had minimal and inappropriate contact with Nicholas V;
7. None of the respondent-parents have been prevented from maintaining a meaningful relationship with the child by unreasonable acts of the child, the other parent, or any other person or by economic circumstances.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. This Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence.
Disposition:
A hearing for a contested termination of parental rights has two phases:(1) Adjudication, in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L., 56 Conn. App. 484,487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367 (1995).
The Court finds that the grounds for termination alleged against each respondent-parent have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in the child's best interest. "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." In re Shyina B., 58 Conn. App. 159, 167 (2000).
The respondent-mother has requested that the court transfer her guardianship to the foster parents as opposed to terminating her parental rights with respect to Nicholas V. In reviewing this request, the court must examine whether it is in the best interests of the child to terminate his parents' rights to them. The court finds that neither parent is in a position to care for Nicholas V. in the near future. The foster parents are the persons that he is attached to and looks to for his needs. Our courts have noted the "deleterious effect of prolonged CT Page 15055 temporary care of abused and neglected children." In re Juvenile Appeal
(84-CD), 189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992). Respondent-mother presented evidence in support of her request to transfer guardianship in the testimony and report of Dawn Bradley. See Respondent-mother's exhibit F. The court does not credit Ms. Bradley's opinion; much of her initial conclusion was based on either erroneous or incomplete facts. When given accurate facts that contradicted the basis for her earlier findings, she chose not to change her opinion, but rather took the position that a child should have as many adults available to him as possible. The Court disagrees with her conclusions. The court also factors into its decision the credible evidence that the foster parents want to adopt Nicholas V. and not merely have guardianship transferred to them. The court concludes, from the clear and convincing testimony, that it is in the best interest of Nicholas V. to have permanency and stability in his life and that it is in his best interests that his parents' right to him be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Zoraida V. and Ellery B., Sr. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Nicholas V. in accordance with State and Federal law.
Ordered this 8th day of November, 2001:
 JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION