[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 21, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Yolanda R. and Reginald G. with respect to their child Alasia G. As to the respondent-mother, the termination petition alleged that she failed to rehabilitate herself within a reasonable period of time so as to encourage the belief that she could assume the role of a responsible parent for her daughter and that there existed no ongoing parent-child relationship between them. See C.G.S. §§ 17-112 (j)(3)(B) and (D). As to the respondent-father, the termination petition alleged that he abandoned his minor child, that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his daughter and that there existed no ongoing parent-child relationship between them. See C.G.S. §§ 17-112 (j)(3)(A), (B) and (D).
The trial commenced on October 9, 2001 and concluded on October 10, 2001. From the evidence presented at the hearing and the applicable case law, the Court grants the termination of parental rights with respect to Alasia G. as to each respondent-parent.
The Court finds the following:
Facts:
Alasia G. was born on July 1998. At the time of her birth, respondent-mother Yolanda R. was twenty years old and respondent-father Reginald G. was twenty-four years old. Alasia G.'s parents never married. DCF has been involved with this child since November of 1998 to the present. She has resided in the same foster home since her placement in 1998. There have been no concerns regarding Alasia G.'s development: she actively engages in the library "story time" program; she engages in coloring activities and is learning her alphabet and how to count numbers. She is medically up to date with all tests and immunizations and suffers from no health concerns. She is completely bonded with her foster family and their extended family. Alasia G. has lived with them since she was three and one-half months old. The foster parents are the only people Alasia G. recognizes as her parents. The foster parents would like to adopt Alasia G. and make her a permanent part of their family.
Respondent-mother Yolanda R. was born on October 18, 1977. She had a CT Page 1449 chaotic upbringing due to reported abuse issues in her family. She lived with her father in New Jersey until she was nine years old. Her father was allegedly physically abusive towards her. At age nine, her father died and she moved to Connecticut to live with her mother. By age thirteen, she was using illicit substances. She is a polysubstance abuser having used marijuana, heroin, and cocaine. She dropped out of school by the ninth grade and has not maintained any steady employment. She has a criminal history which includes a felony conviction for Larceny 2nd Degree in November of 2000. She is frequently vague as to her living arrangements and has been found to be homeless. On May 10, 1999, the court (Ward, J.) defaulted the respondent-mother for her failure to appear and adjudicated the child neglected. On June 17, 1999, the court (Ward, J.) sustained its earlier default against respondent-mother. On December 8, 1999, Yolanda R. appeared in court and the court (Santos, J.) allowed continuing efforts to be made on her behalf to reunite the minor child with respondent-mother. On April 18, 2001 the Court (Tanzer, J.) found that reunification efforts with respondent-mother were no longer appropriate. Yolanda R., though aware of the instant termination proceeding, chose not to attend. The credible evidence establishes that Yolanda R. has not significantly addressed the severity of her problems, and instead continues to engage in criminal activity, continues to relapse in her substance abuse, and continues to ignore her mental health issues. Court expectations were treated as "selective" by Yolanda R. She did not participate fully in the counseling that was expected despite the fact that numerous referrals had been made on her behalf. Yolanda R. did not see Alasia G. until nearly a full year had passed after the child had been removed from her custody. She continues to engage in inconsistent visitation with her child, either by not attending or by arriving late for the visits. During these visits, the respondent-mother showed little interest, warmth or affection towards the child. Alasia G. does not recognize Yolanda R. as her parent. Based on the credible evidence presented at the trial, the Court finds that there is a clear risk that Yolanda R. will continue in her chaotic life style and delay indefinitely the return of this child to her.
Respondent-father Reginald G. was born August 2, 1973. Reginald G. has had a troubled life. He began using illicit substances at nine years old. He reported in his Department of Corrections mental health intake evaluation that he has experienced auditory and visual hallucinations as a result of using narcotics. (See State's exhibit #10). Reginald G. has had significant involvement in the criminal justice system since 1990. He has accumulated numerous felony convictions which include the following offenses: Manslaughter 2nd Degree, Larceny 1st Degree, Robbery 2nd Degree, Sale of Narcotics, and Failure to Appear 1st Degree. He has violated his probation on two separate occasions. During the course of his evaluation with the court-appointed psychologist, he was irritable CT Page 1450 and defensive and had difficulty in controlling his temper. While he eventually was less aggressive towards the examiner, the credible evidence establishes that he has a personality disorder which can be characterized as antisocial with narcissistic and avoidant features. Reginald G. has never met or visited with his child. His claim that DCF is at fault for this circumstance is not credited by the court. Letters written to DCF workers by respondent-father did not begin until January of 2001. These letters are not the equivalent of "contact" for purposing of establishing a bond with Alasia G. and do not appear to be "age appropriate" in their content. According to the testimony of Dr. David Mantell, the letters that were written by Reginald G. would be confusing and frightening for Alasia G. to receive. Reginald G. did not participate in any significant manner in the counseling that was expected of him. Instead Reginald G., while incarcerated, has accumulated numerous disciplinary violations which include fighting, possessing contraband, disobeying direct orders, and threatening. (See State's exhibit #12). The credible evidence establishes that respondent-father has notably poor judgment, difficulty in controlling his anger, and is unreliable.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361 (2001). DCF should not make reunification an impossibility.
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Alasia G. with her parents, Yolanda R. and Reginald G.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual and substance abuse counseling only when she chose to do so and she sporadically visited her daughter. Respondent-father made no appropriate efforts to reunify with his child. Further efforts on the part of DCF with respect to reunify Alasia G. with either respondent-parent simply were not appropriate or possible.
Adjudicatory Findings:
As to the respondent-mother, the Court finds by clear and convincing evidence that Yolanda R. has failed to rehabilitate to such degree as CT Page 1451 would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Alasia G.'s life.
The Court finds that the credible evidence establishes: that Alasia G. was neglected and uncared for and has been in the custody of DCF continuously since November of 1998; that the respondent-mother had been provided specific steps on November 6, 1998 and December 8, 1999 to facilitate the return of this child; that the respondent-mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674,706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied,231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on her child. Yolanda R. continues to show poor judgment and behavior. In fact, despite her knowledge of the pending proceedings, she continued to abuse illicit narcotics and accumulate new criminal arrests and convictions. Respondent-mother failed to attend numerous visitations with her child, failed to attend numerous counseling sessions, and failed to attend critical juvenile court proceedings in this matter.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother has been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and that the respondent-mother failed to avail herself of reunification services. See In re Kelly S.,29 Conn. App. 600, 616-18 (1992).
As to the second ground alleged by the State against respondent-mother, the Court finds by clear and convincing evidence that she has no ongoing parental relationship with Alasia G. and that there is insufficient time to establish one. The credible evidence establishes that Alasia G. does not recognize Yolanda R. as her mother. Respondent-mother has afforded this child very limited time and attention. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In reJohn G., 56 Conn. App. 12, 22 (1999). Consideration of a child's feelings CT Page 1452 and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State has sustained its burden of proof in establishing no ongoing parent-child relationship exists between respondent-mother and Alasia G.
As to the respondent-father Reginald G., the Court finds by clear and convincing evidence that he abandoned his minor child in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Alasia G. The court's finding focuses on the respondent-father's conduct. While his lack of interest in this child is not the sole criterion in determining abandonment, the Court finds that Reginald G. made no attempt to achieve contact with his daughter through visits, telephone calls, gifts, or any level of financial support. Respondent-father has not demonstrated any responsibility for the welfare of this child. The first letters of "contact" he sent were not until January of 2001 and were not age appropriate. Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re Roshawn R., 51 Conn. App. 44, 52 (1998).
As to second ground alleged by the State against the respondent-father, the Court finds by clear and convincing evidence that Reginald G. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time. considering the age and needs of this child, that he could assume a responsible position in Alasia G.'s life.
The Court finds that the credible evidence establishes: that Alasia G. was neglected and uncared for and has been in the custody of DCF continuously since November of 1998; that the respondent-father had been provided specific steps on November 6, 1998 and June 17, 1999 to take to facilitate the return of this child; that Reginald G. has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied,231 Conn. 931 (1994). CT Page 1453
The credible evidence establishes that the respondent-father was chronically involved in the criminal justice system. His lifestyle had a direct and negative effect on his relationship with his daughter. The credible evidence establishes that Reginald G. is antisocial in his behavior and that he puts his own needs and feelings over that of the child.
Respondent-father has not visited with his child, has not advanced in his behavioral issues while in corrections, and, was arrested on new criminal charges. Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner.
As to the final ground alleged by the State against respondent-father Reginald G., the Court finds by clear and convincing evidence that he has no ongoing parental relationship with Alasia G. and that there is insufficient time to establish one. The credible evidence establishes that Alasia G. does not recognize Reginald G. as her father. Respondent-father has afforded this child no attention or time. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12,22 (1999). Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State sustained its burden of proof in establishing no ongoing parent-child relationship exists between respondent-father and Alasia G.
Required Findings:
Once the Court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by clear and convincing evidence, that termination is in the best interest of the child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P., 39 Conn. App. 353
(1995).
The Court makes the following findings based on the credible evidence presented:
1. Each respondent-parent had the opportunity to engage in timely and appropriate services provided to facilitate the reunion of this child with CT Page 1454 the parent. As to the respondent-mother these services included, but were not limited to: addiction assistance, individual counseling and parenting groups; as to the respondent-father, these services included but were not limited to: addiction assistance and individual counseling. Each parent had an obligation to refrain from further involvement in the criminal justice system;
2. DCF made reasonable efforts to reunite the child with her family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-mother's specific steps are found in State's exhibits #1 and #4. The credible evidence shows that mother did not fulfill these requirements and continues to struggle with the same issues currently. The terms of respondent-father's specific steps are found in State's exhibits #2 and 3. The credible evidence shows that respondent-father did not fulfill these requirements even minimally;
4. The child has developed strong feelings and emotional ties towards her foster parents. The child looks to this family for care, comfort and support;
5. Alasia G. is three years old;
6. Respondent-mother has not adjusted her circumstances to make it in the best interest of the child to return to her home in the foreseeable future. The Court finds that her contact was sporadic and her lifestyle chaotic. Respondent-father has had no actual contact with his child at any time and his behavior continues to be antisocial;
7. The respondent-parents have not been prevented from maintaining a meaningful relationship with the child by unreasonable acts of the child, the other parent, or any other person or by economic circumstances.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. The Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence.
Disposition:
CT Page 1455
A hearing for a contested termination of parental rights has two phases: (1) Adjudication, in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L.,56 Conn. App. 484, 487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367
(1995).
The Court finds that the grounds for termination alleged against each respondent-parent have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in the child's best interest. "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." In re Shyina B., 58 Conn. App. 159, 167 (2000).
The Court concludes from clear and convincing evidence that it is in the best interest of Alasia G. to have permanency and stability in her life. Accordingly, it is in her best interests that her parents' rights to her be terminated.
On January 10, 2001, the court (Santos, J.) granted maternal grandmother, Candida S., the right to intervene in the termination proceeding. Based upon the credible evidence presented at the trial, the Court finds that it is not in Alasia G.'s best interest to have continued contact or visitation with the maternal grandmother. The grandmother has a problematic profile which includes unstable relationships with men as well as a volatile relationship with her own daughter, Yolanda R. There is no evidence of any bonding or relationship between the grandmother and the child. The Court finds by clear and convincing evidence that it is not in the child's best interest to have any legal rights of intervention remain with the maternal grandmother.
The Court therefore orders that a termination of parental rights enter with respect to Yolanda R. and Reginald G. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Alasia G. in accordance with State and Federal law.
Ordered this 6th day of February, 2002:
JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION CT Page 1456